GEORGE VERDUGO
2984 Almond Drive
San Jose, CA 95148
408 401 5636
georgeverdugo@gmail.com
Plaintiff, Pro Se

FILED
DEC 04 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

GEORGE VERDUGO,
Plaintiff,
vs.
CITY OF SAN JOSÉ; OFFICER ROCHA (#5077); DOES 1–50,
Defendant(s)

Case No. 5:25-cv-08776-SVK

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Date: December 23, 2025
Time: 10:00 a.m.
Courtroom: 6, 4th Floor
Judge: Hon. Susan van Keulen

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff George Verdugo respectfully submits this Opposition to Defendants' Motion to Dismiss the Complaint.

## PRELIMINARY STATEMENT

This Opposition is timely. Although the CM/ECF docket displayed a November 28 response deadline, that automated date did not account for service by mail or Plaintiff's status as a non-electronic-service participant. The envelope containing Defendants' motion was postmarked November 17, 2025, using Defendants' own Pitney Bowes postage meter, and Plaintiff received the motion by mail on November 18. Because Plaintiff has not consented to electronic service, service is governed by Federal Rule of Civil Procedure 5(b)(2)(C), and Rule 6(d) adds three days for mail

service. Civil Local Rule 7-3(a) provides fourteen days to oppose a motion. Based on the November 17 postmark, and accounting for the intervening weekend and court holiday, the correct deadline to file this Opposition is December 4, 2025. Accordingly, this Opposition is timely.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff George Verdugo brings this civil-rights action based on two unconstitutional warrantless home entries by San José Police Department officers—first on October 15, 2023, and again on May 31, 2025. In both incidents, officers entered Plaintiff's home without a search warrant, without exigent circumstances, and over Plaintiff's express and repeated refusal of consent. In the May 31, 2025 incident, officers solicited "consent" from a tenant who had just been served with a 60-day termination notice and who lacked authority to override Plaintiff's objection. A supervising sergeant was present, heard Plaintiff invoke *Georgia v. Randolph*, and nonetheless directed officers to enter.

These allegations state clear violations of well-established Fourth Amendment law. *Payton v. New York* prohibits warrantless home entry absent exigent circumstances. *Georgia v. Randolph* prohibits reliance on third-party consent when the resident is physically present, and refuses consent. Illinois v. Rodriguez requires officers to have a reasonable belief that a third party has authority to consent. And *Bonivert v. City of Clarkston* applies these principles in the Ninth Circuit to deny qualified immunity where officers enter over an objecting resident.

Plaintiff further alleges that a supervising sergeant ratified the conduct, that multiple officers failed to intervene, and that SJPD's repeated mishandling of these encounters reflects inadequate training and an unconstitutional pattern or custom under *Monell*.

Defendants' motion relies on their own characterization of disputed facts, which cannot be credited on a Rule 12(b)(6) motion. Accepting Plaintiff's allegations as true, the Complaint states multiple Fourth Amendment claims against the officers and a plausible *Monell* claim against the City. At minimum, amendment would not be futile, and dismissal with prejudice would be improper.

**A. Amendment Would Not Be Futile**

Even if the Court concludes that any allegation in the Complaint requires greater factual detail, dismissal with prejudice is improper. Plaintiff has already set forth additional facts in this Opposition that further establish Fourth Amendment violations, supervisory involvement, and a basis for municipal liability. Under Ninth Circuit precedent, including *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc), pro se litigants must be given leave to amend unless amendment would be futile. Plaintiff can and will amend to include these additional facts.

The Motion to Dismiss should be denied.

## II. STATEMENT OF FACTS

Plaintiff George Verdugo resides at 2984 Almond Drive in San José, California, a home owned by his mother but used as his primary residence. This action arises from two separate entries into the residence by San José Police Department ("SJPD") officers—first on October 15, 2023, without any warrant, and again on May 31, 2025, in connection with a nonviolent misdemeanor arrest warrant. In both incidents, Plaintiff expressly refused consent to enter.

**A. October 15, 2023 Incident (Warrantless Entry)**

On October 15, 2023, SJPD officers responded to a 911 call made by a tenant alleging indecent exposure. Plaintiff alleges the accusation was false. Officers did not possess an arrest warrant or a search warrant.

While outside the home, officers obtained consent to enter from the same tenant who made the 911 report. Officers entered the residence through the front door. Plaintiff, who was inside his room, heard the officers, came out, and immediately objected to their entry. Plaintiff stated he was physically present, did not consent, and that the entry was unlawful. Officers responded that they had consent from the tenant. Although Plaintiff was not standing at the doorway before officers entered, Randolph still applies because he objected immediately upon becoming aware of their entry.

Officers arrested Plaintiff inside the home. Plaintiff asked the officers to call a supervising sergeant. The supervisor arrived after Plaintiff had already been handcuffed and placed in the back of a patrol car. Plaintiff informed the supervisor that officers had entered illegally, but the supervisor ratified the arrest. The District Attorney later declined to prosecute the indecent-exposure allegation. Plaintiff alleges that body-worn cameras recorded the encounter, including his objection.

**B. May 31, 2025 Incident (Entry to Arrest on Non-Violent Misdemeanor Warrant)**

On May 31, 2025, officers again came to the residence, this time regarding an outstanding non-violent misdemeanor arrest warrant. Plaintiff remained inside and repeatedly refused requests to exit the home. Plaintiff invoked *Georgia v. Randolph* multiple times, informing officers that they could not legally enter to arrest him over his objection.

Earlier that same day, the tenant—who had lived in the home for approximately one year—had been served with a 60-day termination notice. In apparent retaliation, the tenant called 911 and alleged Plaintiff had assaulted him. Officers investigated the claim and stated it appeared to be a "he-said, he-said" situation; they did not arrest Plaintiff for the tenant's allegation.

Officers continued attempting to arrest Plaintiff on the misdemeanor warrant and asked him to exit the home. Plaintiff refused and stated he was invoking his constitutional rights. Plaintiff requested that a supervising sergeant respond.

When the supervisor arrived, the tenant—who had been outside—opened the front door and walked back inside the home past Plaintiff and the officers. Plaintiff again stated: "I do not consent." The supervisor then sought consent from the tenant. Plaintiff, physically present at the doorway, repeated his refusal and stated that third-party consent was invalid under Randolph.

No officer asked Plaintiff whether the tenant shared access to private interior spaces or otherwise had authority to admit officers over Plaintiff's objection. Based

solely on the tenant's consent, officers entered the residence and arrested Plaintiff without resistance. The supervisor remained at the threshold. When Plaintiff again stated that the entry was unlawful, the supervisor responded: "Take it up with Internal Affairs." Plaintiff alleges that body-worn cameras recorded this encounter.

**C. Prior Attempts to Arrest Plaintiff at Home**

Plaintiff alleges that on at least two occasions prior to May 31, 2025, officers came to the residence regarding the same misdemeanor warrant. Officers asked Plaintiff to exit the home, and he refused, invoking his rights. Officers then departed and did not enter the home during these prior encounters. During one attempt, an officer told Plaintiff: "You better watch your back."

On these prior occasions, Plaintiff was alone in the home, and no other person was present who could have provided consent for officers to enter.

Although the officers involved in those prior encounters were not the same individuals present on May 31, their conduct illustrates what a reasonable officer would understand: absent exigency or valid consent, entry is not permitted when a present resident refuses access.

Moreover, Plaintiff is not required at the pleading stage to negate all hypothetical scenarios or alternative explanations for officers' conduct. The Ninth Circuit makes clear that a *Monell* plaintiff "need not disprove alternative explanations" and need only allege facts supporting a *plausible inference* of a policy or custom. *Johnson v. Shasta County*, 83 F.4th 1114, 1124 (9th Cir. 2023). The fact that no third party was present during the prior attempts does not undermine the inference that officers understood they could not enter the home without exigent circumstances or valid consent. What matters for *Monell* purposes is what officers **actually did** on those occasions: they declined to enter after Plaintiff refused. Those concrete events plausibly support the existence of a departmental practice restricting home entry for this non-violent misdemeanor warrant, even if officers theoretically *might* have sought third-party consent under different circumstances.

**D. Resulting Claims**

Plaintiff alleges that:

• The October 15, 2023 warrantless entry violated the Fourth Amendment, including principles established in *Payton, Randolph, and Rodriguez.* This entry followed a false indecent-exposure allegation made by a tenant, which was never prosecuted.

• The May 31, 2025 entry violated *Randolph, Payton, Welsh, and Rodriguez* because officers entered despite Plaintiff's explicit objection, without exigent circumstances, and based on invalid tenant consent. This entry occurred in connection with only a nonviolent misdemeanor arrest warrant, which strongly weighs against any claim of exigent circumstances.

• A supervising sergeant ratified the unconstitutional entries.

• Multiple officers failed to intervene.

• SJPD's repeated mishandling of home-entry rules, even after Plaintiff cited constitutional law by name, reflects unconstitutional municipal customs, practices, or inadequate training under Monell.

## III. LEGAL STANDARD

**A. Rule 12(b)(6) Standard**

To survive a motion to dismiss, a complaint must allege facts that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The Court must accept all well-pled *factual allegations as true and draw all reasonable inferences in Plaintiff's favor. Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir. 1996). Dismissal is improper where factual disputes or competing interpretations exist, as those issues cannot be resolved at the Rule 12 stage. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).

**B. Liberal Construction of Pro Se Pleadings**

Pro se civil-rights complaints must be construed liberally and dismissed only where amendment would be futile. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Lopez v. Smith,* 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc). Courts in the Ninth Circuit must give pro se litigants "the benefit of any doubt." *Bretz v. Kelman,* 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

### C. Qualified Immunity at the Pleading Stage

Qualified immunity shields officers only when their conduct does not violate clearly established constitutional rights. At the motion to dismiss stage, the Court must accept Plaintiff's allegations as true and may grant qualified immunity only when, under those assumed facts, no constitutional violation is shown or the law was not clearly established. *Keates v. Koile,* 883 F.3d 1228, 1234–35 (2018). Where factual disputes remain regarding what officers knew, saw, or reasonably believed, dismissal on qualified immunity grounds is inappropriate. *Schoenleber v. City of Fremont*, 392 F. Supp. 3d 1082, 1091 (N.D. Cal. 2019).

### D. Monell Liability at the Pleading Stage

A municipality may be liable under § 1983 when a constitutional violation results from an official policy, longstanding practice or custom, failure to train or supervise amounting to deliberate indifference, or ratification by a final policymaker. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978). At the Rule 12 stage, a plaintiff "need only allege facts demonstrating the plausibility of a Monell claim; detailed proof is unnecessary." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637–38 (2012); *Johnson v. Shasta County,* 83 F.4th 1114, 1124 (2023). When a supervisor is alleged to have approved or ratified unconstitutional conduct, those allegations may support municipal liability. *Larez v. City of Los Angeles*, 946 F.2d 630, 646–48 (1991).

## IV. ARGUMENT

### A. The Warrantless Entries Violated the Fourth Amendment

As a threshold matter, the Court must accept Plaintiff's factual allegations as true and may not credit Defendants' competing factual assertions regarding the co-tenant's authority, officer beliefs, or circumstances not alleged in the Complaint. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Defendants' arguments about the validity of consent, the scope of authority, and the officers' understanding rely on facts outside the Complaint and cannot support dismissal under Rule 12(b)(6).

Warrantless entry into a home is "the chief evil" the Fourth Amendment guards against. *Payton v. New York,* 445 U.S. 573, 585 (1980). Both entries alleged here—October 15, 2023 and May 31, 2025—occurred without a search warrant, without exigent circumstances, and over Plaintiff's express refusal of consent. Accepting the allegations as true, as required at this stage, both incidents state clear Fourth Amendment violations.

**1. Officers Violated Georgia v. Randolph by Entering Over Plaintiff's Express Refusal**

In *Georgia v. Randolph,* 547 U.S. 103 (2006), the Supreme Court held that officers may not enter a home based on a co-occupant's consent when a physically present resident expressly refuses. Plaintiff alleges that:

• On May 31, 2025, he stood at the doorway, expressly refused consent, and invoked Randolph by name; and

• On October 15, 2023, when officers had already entered, he immediately objected, stated he was physically present, and implicitly invoked the same principle forbidding third-party override.

An objection voiced from inside the home is legally identical to an objection made at the doorway. The Ninth Circuit has squarely held that *Randolph* applies whether the objection is made at the threshold or after officers have already entered and encountered the resident. An objection "communicated from inside the dwelling

is equally effective," and officers must immediately withdraw. *Bonivert v. City of Clarkston*, 883 F.3d 865, 874–75 (9th Cir. 2018).

Thus, with respect to the October 15, 2023 incident, once Plaintiff stated he was present and refused consent, the officers' continued presence in the home became unconstitutional under *Randolph* and *Bonivert*. The fact that officers had already crossed the threshold does not diminish the legal effect of Plaintiff's objection; it heightens the constitutional violation because officers had a duty to immediately depart once refusal became clear.

Officers nonetheless entered based solely on tenant consent. Moreover, no exigent circumstances justified overriding Plaintiff's explicit refusal. The Supreme Court has emphasized that the gravity of the underlying offense is central to the exigency analysis, and that exigency "should rarely be sanctioned" when officers are dealing with a nonviolent or minor offense. *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984). The Ninth Circuit applies this rule strictly, holding that where officers face no emergency, no threat, and no risk of evidence destruction, exigency cannot justify warrantless home entry. *Hopkins v. Bonvicino*, 573 F.3d 752, 769 (9th Cir. 2009).

Accepting the allegations as true, officers encountered no ongoing crime, no injury, no emergency call reporting danger, and no facts suggesting imminent harm. Under *Welsh* and *Hopkins*, exigency cannot serve as a fallback justification for the warrantless entry once Plaintiff refused consent.

The Ninth Circuit has repeatedly reaffirmed that this rule is clearly established. *Bonivert v. City of Clarkston,* 883 F.3d 865, 873–80 (2018). Under Randolph and Bonivert, these allegations state a Fourth Amendment violation and defeat qualified immunity at the pleading stage.

The Ninth Circuit has made clear that Randolph flatly prohibits police from entering a residence based on third-party consent when the physically present resident objects. See *Bonivert v. City of Clarkston*, 883 F.3d 865, 874–75 (9th Cir. 2018) (holding that entry over objection violated clearly established law). In Bonivert, as

here, officers relied on a third party's consent despite the resident's express refusal, and the court held that such conduct was unconstitutional and not protected by qualified immunity.

Defendants argue that the co-tenant "had every right to consent," but that position is foreclosed by Randolph itself. Randolph makes the objecting occupant's refusal dispositive, even where the consenting co-tenant would otherwise have authority to admit officers. 547 U.S. at 114–15. Thus, Defendants' reliance on the tenant's purported consent cannot defeat Plaintiff's Fourth Amendment claim at the pleading stage.

**2. Officers Misused Payton and Lacked Any Exigency Permitting Entry**

An arrest warrant alone does not authorize warrantless home entry. Officers may enter only if they reasonably believe (1) the suspect resides there, (2) the suspect is present, and (3) no exigency exists. Payton, 445 U.S. at 603. Minor offenses strongly weigh against exigency. *Welsh v. Wisconsin,* 466 U.S. 740, 753 (1984).

Plaintiff alleges:

• The October 15, 2023 entry was warrantless.

• The May 31, 2025 entry involved only a non-violent misdemeanor warrant, a category courts strongly disfavor as a basis for warrantless home entry.

• Officers declined to arrest Plaintiff for the tenant's assault claim because it was a "he said, he said" with no marks or evidence, confirming lack of emergency.

• On two prior occasions, officers attempted to arrest Plaintiff on the same misdemeanor warrant but left after Plaintiff refused to exit—showing that reasonable officers saw no urgency justifying entry.

• "Similar to the prior two occasions, nothing justified warrantless entry on May 31; the only difference was the presence of a third party whose consent was invalid under Randolph and Rodriguez."

These allegations show that officers lacked any lawful basis to enter Plaintiff's home under Payton.

Further, Plaintiff's allegations show that officers attempted to circumvent Payton's limitations by switching from warrant authority to third-party consent. On two prior attempts to execute the same misdemeanor arrest warrant, officers declined to enter the home after Plaintiff refused to step outside—confirming their understanding that the warrant did **not** authorize non-consensual entry.

On May 31, however, officers abruptly abandoned this limitation and attempted to enter solely on the basis of the tenant's consent. Courts have rejected this type of "authority switching," where officers seek entry under one legal theory but later attempt to justify it under another. An entry invalid at its inception cannot be rehabilitated by pointing back to a warrant the officers themselves chose not to rely upon. See *United States v. Quaempts*, 411 F.3d 1046, 1054 (9th Cir. 2005) (entry invalid where officers relied on consent to bypass warrant limits).

These facts plausibly show that officers used tenant consent as an impermissible workaround to achieve what Payton forbids—a warrantless, non-exigent entry into the home.

The Ninth Circuit has repeatedly applied Payton to hold that officers may not enter a home to investigate or arrest absent exigent circumstances or valid consent. See *LaLonde v. County of Riverside,* 204 F.3d 947, 954–55 (9th Cir. 2000) (finding no exigency and holding that entry into a home based on a minor domestic dispute violated clearly established Fourth Amendment law). As in LaLonde, the allegations here show no emergency, no threat, and no justification for entry over Plaintiff's refusal.

The Ninth Circuit has also rejected claims of exigency in circumstances far more urgent than those alleged here. See *Hopkins v. Bonvicino,* 573 F.3d 752, 764–65 (9th Cir. 2009) (finding no exigent circumstances where officers entered a home without a warrant despite safety concerns). Hopkins confirms that "mere

convenience" or a desire to arrest more efficiently does not justify warrantless entry into a home. The facts here, involving only a non-violent misdemeanor warrant and no safety risk, fall squarely within Hopkins.

Even if officers possessed a valid arrest warrant, the in-home arrest alleged here remains unconstitutional because it followed an unlawful entry. Under *Payton v. New York*, 445 U.S. 573, 589–90 (1980), an arrest warrant authorizes officers to enter a home **only when the entry itself is lawful**. A warrant does not sanitize, cure, or retroactively justify an unconstitutional entry.

The Ninth Circuit has repeatedly reaffirmed this principle: when officers make an unlawful entry, any resulting in-home arrest is likewise unlawful. See *United States v. Quaempts*, 411 F.3d 1046, 1054 (9th Cir. 2005) ("Even with an arrest warrant, officers may not enter a residence unless the entry is lawful."). Thus, even assuming an arrest warrant existed on May 31, the Complaint alleges that officers entered without exigency, without valid consent, and over Plaintiff's refusal. Under *Payton* and *Quaempts*, the ensuing arrest inside the home was unconstitutional and cannot be justified by the arrest warrant.

This independently defeats qualified immunity because the rule that an unlawful entry cannot support an in-home arrest was clearly established long before 2023 and 2025.

The entry is further unreasonable because officers failed to knock and announce before entering the home. The Supreme Court has recognized that the knock-and-announce requirement is a foundational component of the Fourth Amendment's protection of the home. *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995). Although *Hudson v. Michigan*, 547 U.S. 586 (2006), removed suppression as a remedy in criminal cases, the Court expressly preserved § 1983 civil liability for unconstitutional no-knock entries.

The Ninth Circuit continues to treat warrantless entries made without knocking or announcing as strong evidence of objective unreasonableness. See *LaLonde v.*

*County of Riverside*, 204 F.3d 947, 956 (9th Cir. 2000) (holding that officers violated clearly established law by entering without knocking or announcing absent exigency). The Complaint does not allege a knock-and-announce violation. Plaintiff can amend, if necessary, to clarify that officers entered without providing notice. Regardless, the entry was unconstitutional because it occurred without valid consent and without any exigent circumstances, as required under Payton, Randolph, Welsh, and Ninth Circuit precedent.

**3. Tenant Consent Was Invalid Under Illinois v. Rodriguez**

Even apart from Randolph, the tenant's consent was invalid because officers lacked an objectively reasonable basis to believe he had authority to admit them. *Illinois v. Rodriguez,* 497 U.S. 177, 188–89 (1990).

Plaintiff alleges:

• The tenant had been served a 60-day termination notice earlier that day, creating ambiguity requiring officers to clarify the tenant's authority instead of assuming it.

• Plaintiff stood at the threshold, physically present and expressly refusing entry, while asserting the tenant lacked authority. Under Rodriguez, this combination required officers to investigate the scope of the tenant's access.

• No inquiry was made into whether the tenant shared access or mutual use of the areas officers intended to enter.

• The supervisor sought tenant consent only after the tenant walked past Plaintiff and the officers into the home—a sequence heightening ambiguity and triggering a duty to confirm authority.

• On two earlier occasions, different officers attempted to arrest Plaintiff on the same warrant but left when Plaintiff refused entry. While the officers were not the same individuals, this pattern shows what a reasonable officer would understand: third-party consent does not override a present resident's objection absent exigency or clear joint-access authority.

Taken as true, these allegations plausibly show that reliance on tenant consent was not objectively reasonable under Rodriguez.

Rodriguez also requires officers to investigate when circumstances create ambiguity regarding a third party's authority. Here, Plaintiff expressly informed officers that the tenant lacked authority to admit them. Combined with the tenant having just received a 60-day termination notice, officers were required to pause and verify authority rather than proceed. Their failure to clarify this ambiguity further renders reliance on consent unreasonable under Rodriguez.

The Ninth Circuit likewise requires officers to make further inquiry when confronted with ambiguous or questionable third-party authority to consent. *Motley v. Parks,* 432 F.3d 1072, 1080–81 (9th Cir. 2005) (en banc) ("When confronted with ambiguous facts related to authority, officers must investigate further before reasonably relying on consent."). Plaintiff's allegation that he expressly informed officers the tenant lacked authority makes their failure to investigate unreasonable under *Motley and Rodriguez.*

Other Ninth Circuit decisions confirm that officers may not rely on third-party consent where circumstances cast doubt on the person's authority. *United States v. Nora,* 765 F.3d 1049, 1055–56 (9th Cir. 2014) (holding that ambiguity regarding shared access rendered reliance on consent unreasonable). Here, the tenant's termination notice and Plaintiff's explicit statements made any belief in the tenant's authority objectively unreasonable under Nora.

Additionally, ambiguity regarding tenant authority is heightened where the physical layout, sequence of events, or verbal interactions create uncertainty about shared access. Courts have repeatedly held that officers may not assume common authority merely because a third party is present. See *United States v. Hephner*, 103 F.3d 120 (9th Cir. 1996) (officers lacked reasonable belief in authority where circumstances created doubt).

With respect to the October 15, 2023 incident, officers obtained purported consent from the tenant while he was outside the home and then entered the residence without knocking or announcing their presence. The current Complaint does not yet plead this knock-and-announce violation, but Plaintiff can amend to include it. This sequence matters because a warrantless entry performed without notice—combined with Plaintiff's immediate objection once he became aware of the officers—further demonstrates the unreasonableness of the entry under *Payton*, *Randolph*, *Bonivert*, and *LaLonde*. Even with third-party consent, officers may not enter a home without knocking or announcing absent exigent circumstances, none of which existed here.Qualified immunity cannot be resolved at this stage because the Complaint alleges violations of clearly established Fourth Amendment law. By 2023 and 2025, it was well established that:

• Officers may not enter a home on third-party consent when a physically present resident objects (*Georgia v. Randolph*, 547 U.S. 103 (2006); *Bonivert v. City of Clarkston*, 883 F.3d 865, 874–75 (9th Cir. 2018));

• Officers may not treat an arrest warrant as authority to enter absent exigency or valid consent (*Payton v. New York*, 445 U.S. 573, 589–90 (1980); *LaLonde v. County of Riverside*, 204 F.3d 947, 954–55 (9th Cir. 2000));

• Officers may not rely on ambiguous third-party authority without further inquiry (*Illinois v. Rodriguez*, 497 U.S. 177, 188–89 (1990); *Motley v. Parks*, 432 F.3d 1072, 1080–81 (9th Cir. 2005) (en banc); *United States v. Nora*, 765 F.3d 1049, 1055–56 (9th Cir. 2014)); and

• Warrantless entries conducted without knocking or announcing are unconstitutional absent exigency (*Wilson v. Arkansas*, 514 U.S. 927, 934 (1995); *LaLonde*, 204 F.3d at 956).

Taking Plaintiff's allegations as true, no reasonable officer could believe that tenant consent—given immediately after a termination notice, over Plaintiff's explicit

refusal, and without any inquiry into authority—provided lawful grounds to enter the home. Under *Randolph*, *Rodriguez*, and *Bonivert*, the unlawfulness of entering over a present resident's objection was clearly established. Qualified immunity cannot support dismissal under Rule 12(b)(6).

**4. The Entry Was Per Se Unreasonable**

Considering: (1) no warrant for the 2023 entry; (2) only a non-violent misdemeanor warrant for the 2025 entry; (3) Plaintiff's express refusal; (4) invalid third-party consent; (5) absence of exigency; and (6) the fact that officers previously left under identical circumstances—both entries were per se unreasonable under the Fourth Amendment.

The May 31, 2025 entry did not involve a knock-and-announce violation, and Plaintiff's Fourth Amendment challenge to that incident does not rely on such a theory. The constitutional defect in the 2025 entry stems from officers entering the home over Plaintiff's explicit and repeated objection, without exigent circumstances, and based on invalid third-party consent under *Randolph*, *Rodriguez*, and *Bonivert*. Even absent a knock-and-announce issue, these facts independently render the 2025 entry unreasonable under clearly established law.

By contrast, the October 15, 2023 incident did involve officers entering the home after obtaining purported third-party consent but without knocking or announcing; Plaintiff can amend the Complaint to include this fact if the Court finds it relevant.

Qualified immunity provides no basis for dismissal because the Complaint alleges violations of clearly established Fourth Amendment principles. By 2023 and 2025, it was firmly established that:

• Officers may not enter a home on third-party consent when a physically present resident objects (*Randolph*; *Bonivert*);

• Oficers may not enter a home on an arrest warrant absent exigency or valid consent (*Payton*; *LaLonde*);

• Officers may not rely on ambiguous third-party authority without investigation (*Rodriguez*; *Motley*; *Nora*; *Hephner*); and

• Officers may not conduct a warrantless entry without knocking and announcing absent exigency (*Wilson*; *LaLonde*).

Taking the allegations as true, no reasonable officer could believe that tenant consent—after a termination notice, after Plaintiff's express refusal, and without any inquiry into authority—permitted a warrantless entry into Plaintiff's home. Because the law governing these situations was clearly established long before the incidents in question, qualified immunity cannot be resolved at the pleading stage.

**C. Plaintiff Plausibly Alleges Monell Liability Against the City**

Plaintiff alleges two unlawful entries, inconsistent officer practices, supervisory involvement and repeated misapplication of well-established Fourth Amendment principles. Collectively, these allegations support three independent *Monell* theories.

At the pleading stage, Plaintiff is not required to identify the specific text of a written SJPD policy or rule. The Ninth Circuit holds that a Monell plaintiff need only allege facts that make the existence of a municipal custom or practice *plausible*. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637–38 (9th Cir. 2012). A plaintiff "is not required to disprove alternative explanations" for officers' conduct and may rely on reasonable inferences drawn from repeated patterns of police behavior. *Johnson v. Shasta County*, 83 F.4th 1114, 1124 (9th Cir. 2023).

Here, Plaintiff alleges two prior attempts to execute the same misdemeanor warrant, during which officers asked Plaintiff to step outside but refused to enter the home after Plaintiff declined. These repeated, consistent actions plausibly support the inference that SJPD maintained a policy, practice, or widespread custom prohibiting home entry to execute non-violent misdemeanor warrants absent exigency. The presence of a third party on May 31, 2025 does not negate this inference; it merely

provided officers an opportunity to circumvent the established practice that had been followed during previous encounters.

These recurring patterns, combined with supervisory involvement during the May 31 entry, plausibly allege not only an unconstitutional custom but also ratification, because SJPD supervisors approved or failed to correct the unconstitutional conduct despite prior notice.

**1. Supervisory Ratification (Larez)**

A municipality is liable when a supervisor ratifies unconstitutional conduct. *Larez v. City of Los Angeles,* 946 F.2d 630, 646–48 (1991).

Plaintiff alleges:

• In 2023, the supervisor arrived after the arrest and ratified the entry.

• In 2025, the supervisor solicited invalid consent over Plaintiff's objection and told him, "Take it up with Internal Affairs."

These allegations plausibly support ratification.

**D. Pattern and Custom**

A municipal custom may be inferred from repeated unconstitutional acts even within a limited timeframe. *AE ex rel. Hernandez,* 666 F.3d at 636–37.

Plaintiff further alleges:

• Two unconstitutional entries involving multiple officers and supervisors.

• Two prior encounters where officers left after Plaintiff refused consent, showing inconsistent and incorrect understanding of home-entry rules.

• An officer telling Plaintiff to "watch your back," suggesting improper enforcement practices.

These allegations plausibly allege an unconstitutional custom or deficient training.

At the pleading stage, Plaintiff is not required to identify the exact text of a written policy or prove its existence. Monell liability may rest on allegations that make the existence of a practice or custom plausible. *AE ex rel. Hernandez v. County*

*of Tulare*, 666 F.3d 631, 637–38 (9th Cir. 2012). Repeated unconstitutional acts by officers—even across different personnel—support an inference of a municipal custom. *Johnson v. Shasta County*, 83 F.4th at 1124. Plaintiff's allegations that officers declined to enter the home on prior occasions, only to enter unlawfully on May 31, plausibly support the inference of an inconsistent or inadequately trained approach amounting to an unconstitutional practice.

**E. Failure to Train or Supervise**

A failure-to-train claim is plausible where officers repeatedly misunderstand basic constitutional requirements. *City of Canton v. Harris,* 489 U.S. 378, 390 (1989).

Plaintiff alleges:

- Repeated misapplication of Payton, Randolph, and Rodriguez.
- Officers ignored Plaintiff's explicit invocation of constitutional law.
- Supervisors ratified both incidents instead of correcting violations.

These facts suffice at the pleading stage. These allegations also satisfy the causation—or "moving force"—requirement for Monell liability. A municipality is liable under § 1983 when its policy, custom, or failure to train is the "moving force" behind the constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Here, Plaintiff alleges that officers twice declined to enter in prior encounters, demonstrating that proper training would have prevented the May 31 entry. Plaintiff further alleges that supervisors ratified the unconstitutional conduct and that the entry and arrest occurred only because officers were improperly trained regarding Randolph, Payton, Rodriguez, and the duty to investigate ambiguous authority. Taken as true, these allegations plausibly show that the City's policies, customs, and training deficiencies were the moving force behind both unlawful entries and the resulting arrest.

**F. Qualified Immunity Does Not Apply**

Qualified immunity does not apply when:

1. Plaintiff alleges conduct that violates the Fourth Amendment; and

2. The unlawfulness was clearly established.

Both prongs are met.

The Ninth Circuit routinely denies qualified immunity where officers enter a home without a warrant in the absence of exigency or valid consent. See *Hopkins,* 573 F.3d at 772 (no qualified immunity for unlawful entry); *LaLonde,* 204 F.3d at 954–55 (same); *Bonivert,* 883 F.3d at 874–75 (entry over objection violated clearly established law). These cases make clear that, accepting Plaintiff's allegations as true, reasonable officers would have known that entering Plaintiff's home over his objection was unconstitutional.

Clearly established law includes:

- *Payton* (1980): no warrantless home entry absent exigency
- *Randolph* (2006): refusal by a present resident controls
- *Rodriguez* (1990): consent must be supported by reasonable belief in authority
- *Welsh* (1984): minor offenses rarely justify entry
- *Bonivert* (2018): Ninth Circuit—no qualified immunity for entry over objection

Plaintiff alleges:

- He expressly refused entry.
- No exigency existed.
- Tenant consent was objectively unreasonable.
- Supervisors ratified the conduct.
- Officers previously left under identical circumstances.

At this stage, the Court must accept these facts as true. Under those facts, no reasonable officer could believe the entries were lawful.

**1. Fact Disputes Bar Qualified Immunity**

Qualified immunity is inappropriate at the pleading stage where, as here, the constitutionality of the officers' conduct turns on disputed factual questions regarding

consent, authority, presence, objection, and exigency. See *Keates v. Koile*, 883 F.3d 1228, 1234–35 (9th Cir. 2018). These disputes cannot be resolved on a motion to dismiss.

**V. Doe Defendants Are Properly Pleaded and Should Not Be Dismissed**

Doe pleading is proper at the pleading stage in the Ninth Circuit where, as here, the identities of individual officers are not yet known. The Ninth Circuit has long recognized that "the use of 'John Doe' to identify defendants is not favored, but it is permissible where the identity of alleged defendants is not known prior to the filing of a complaint." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). When a plaintiff has alleged unconstitutional conduct by unknown officers and cannot identify them before discovery, the proper course is to allow the case to proceed and permit identification through discovery, rather than dismissing the claims. See *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) ("Where the identity of alleged defendants cannot be known prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants.").

Here, Plaintiff alleges that multiple San José Police Department officers participated in the unconstitutional entries and arrests, but Plaintiff does not yet know all of their names or badge numbers. Those identities can and will be revealed through initial disclosures and discovery, including body-worn camera recordings and incident reports. This is precisely the situation in which Doe pleading is allowed. Plaintiff will promptly amend the complaint to substitute real names for each Doe defendant once their identities are learned through Rule 26 disclosures or discovery. Dismissing Does 1–50 at this stage would be inconsistent with Ninth Circuit precedent and premature.

**VI. CONCLUSION**

For the reasons stated above, the Court should deny Defendants' Motion to Dismiss in its entirety. Accepting the allegations as true, Plaintiff has plausibly stated multiple Fourth Amendment claims arising from two separate unlawful home entries, an unlawful in-home arrest, supervisory ratification, failure to intervene, and a plausible *Monell* claim against the City of San José. At a minimum, because amendment would not be futile, dismissal with prejudice is improper. Should the Court identify any deficiency in the pleading, Plaintiff respectfully requests leave to amend.

Respectfully submitted,

Dated: December 3, 2025

By: */s/ George Verdugo*
George Verdugo

GEORGE VERDUGO
2984 Almond Drive
San Jose, CA 95148
408 401 5636

Plaintiff, Pro Se

RECEIVED
DEC 04 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GEORGE VERDUGO,<br>Plaintiff,<br>vs.<br>CITY OF SAN JOSÉ; OFFICER ROCHA (#5077); DOES 1–50,<br>Defendant(s) | Case No. 5:25-cv-08776-SVK<br>**[PROPOSED] ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br>Date: December 23, 2025<br>Time: 10:00 a.m.<br>Courtroom: 6, 4th Floor<br>Judge: Hon. Susan van Keulen |

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). Having considered the papers, the arguments presented, and the record in this matter, and good cause appearing, the Court hereby ORDERS:

1. Defendants' Motion to Dismiss is DENIED.

2. Plaintiff has adequately stated claims for relief under the Fourth Amendment and 42 U.S.C. § 1983, including claims arising from the alleged warrantless entries, unlawful in-home arrest, supervisor ratification, failure to intervene, and municipal liability under Monell.

3. To the extent amendment is deemed necessary, Plaintiff shall be granted leave to file a First Amended Complaint within 30 days of this Order.

IT IS SO ORDERED.

Dated:______________________

Hon. Susan van Keulen
United States Magistrate Judge
Northern District of California

# PROOF OF SERVICE

**Case Name:** *George Verdugo v. City of San Jose, et al.*
**Case No.:** *5:25-cv-08776-SVK*

I, the undersigned, declare:

I am over the age of 18 and not a party to this action. My address is 2984 Almond Drive, San José, California 95148. I served the following documents:

1. **Plaintiff's Opposition to Defendants' Motion to Dismiss**
2. **[Proposed] Order Denying Defendants' Motion to Dismiss**

## Method of Service: U.S. Mail

On **December 4, 2025,** I placed a true copy of the above documents in a sealed envelope with postage fully prepaid, and deposited the envelope for collection and mailing with the United States Postal Service.

I am readily familiar with my practice for collecting and processing mail for the U.S. Postal Service. Correspondence deposited with the U.S. Postal Service is served that same day in the ordinary course of business.

## Served on:

**Brian Loftus, Sr. Deputy City Attorney**
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, CA 95113-1905
Email: cao.main@sanjoseca.gov
**Attorneys for Defendants City of San Jose and Officer Rocha #5077**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **December 4, 2025**, at San José, California.

---

**/s/ George Verdugo**
**George Verdugo**
Plaintiff, Pro Se