GEORGE VERDUGO
2984 Almond Drive
San Jose, CA 95148
408 401 5636

Plaintiff, Pro Se

FILED
APR 22 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| GEORGE VERDUGO,<br>Plaintiff,<br>vs.<br>CITY OF SAN JOSÉ; OFFICER ROCHA (#5077); DOES 1–50,<br>Defendant(s) | Case No. 5:25-cv-08776-SVK<br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br>Date:<br>Time:<br>Courtroom: 6, 4th Floor<br>Judge: Hon. Susan van Keulen |

## I. JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Santa Clara County, California, within the Northern District of California.

## II. PARTIES

4. Plaintiff George Verdugo is an adult resident of San Jose, California.

5. Defendant City of San Jose is, and at all relevant times was, a municipal entity responsible for the policies, customs, practices, training, supervision, and discipline of the San Jose Police Department ("SJPD").

6. Defendant Officer Rocha (#5077) is, and at all relevant times was, an SJPD officer acting under color of state law.

7. Defendant Officer Leglu is, and at all relevant times was, an SJPD officer acting under color of state law.

8. Defendants Does 1 through 20 are SJPD officers, supervisors, sergeants, lieutenants, or other persons whose true names and capacities are presently unknown to Plaintiff. These Doe Defendants include, without limitation, the two uniformed male SJPD officers who entered Plaintiff's home and arrested him on May 31, 2025, and the supervising officers who responded to and approved the challenged conduct on October 15, 2023 and May 31, 2025. Each Doe Defendant participated in, directed, authorized, ratified, or failed to prevent the unconstitutional conduct alleged herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Each Doe Defendant is liable for one or more of the claims for relief alleged below.

9. At all relevant times, each Defendant acted under color of state law and within the course and scope of his or her employment, agency, or authority.

## III. FACTUAL ALLEGATIONS

A. October 15, 2023 Warrantless Entry and In-Home Arrest

10. On October 15, 2023, SJPD officers, including Officer Rocha and Officer Leglu, came to Plaintiff's residence in San Jose, California.

11. The officers did not possess a search warrant.

12. The officers did not possess an arrest warrant.

13. The officers asserted that a co-tenant had made a 911 report alleging indecent exposure.

The officers entered the residence based on purported consent from that co-tenant. Plaintiff was inside his bedroom when the officers entered the home. As soon as Plaintiff became aware of the officers' presence inside the home, he came out of his bedroom and expressly objected to their entry. Plaintiff clearly told the officers that he did not consent to their entry and that they needed to leave the residence. Plaintiff was physically present in the residence and expressly refused consent while the officers were still inside the home. Despite Plaintiff's clear and immediate objection, the officers remained inside the residence. Officers Rocha and Leglu physically arrested Plaintiff inside his home and placed him in handcuffs. Plaintiff requested that a supervisor respond to the scene. A supervising officer, presently identified as DOE SUPERVISOR 1, later arrived. DOE SUPERVISOR 1 was a white male approximately in his 50s to 60s. Plaintiff informed DOE SUPERVISOR 1 that the officers had entered and arrested him unconstitutionally over his objection and without a warrant. Rather than correcting the violation or directing the officers to leave, DOE SUPERVISOR 1 ratified the conduct and stated, "Take it up with Internal Affairs." After the arrest, Plaintiff was transported for booking. The District Attorney later declined to file charges arising from the indecent exposure allegation. The October 15, 2023 incident caused Plaintiff humiliation, embarrassment, emotional distress, and loss of security in his home.

B. May 31, 2025 Entry Over Objection and In-Home Arrest

On May 31, 2025, approximately six to eight SJPD officers came to Plaintiff's residence regarding a non-violent misdemeanor arrest warrant.

Plaintiff remained inside the home and repeatedly refused to exit.

Plaintiff expressly refused consent for officers to enter the residence.

Plaintiff repeatedly invoked his constitutional rights and informed the officers that they could not lawfully enter over his objection.

31A. For approximately one hour before any officer crossed the threshold, officers remained outside the home, repeatedly demanded that Plaintiff exit, and heard Plaintiff repeatedly refuse to come out while explicitly invoking his constitutional rights, including Georgia v. Randolph, and stating that they could not lawfully enter over his objection.

Plaintiff specifically invoked Georgia v. Randolph and told the officers that third-party consent could not override the objection of a physically present resident.

Earlier that same day, a co-tenant had been served with a 60-day termination notice.

The residence was a single-family house with five bedrooms, and each tenant, including Plaintiff and the co-tenant, had an individual bedroom used exclusively by that person. The co-tenant shared only the common areas of the home, such as the front door, entryway, living room, kitchen, and hallways, and did not have a key to or any right of access to Plaintiff's private locked bedroom or other exclusively used personal space.

No officer asked Plaintiff any questions regarding the co-tenant's authority to consent to entry into Plaintiff's private locked bedroom, to any other areas used exclusively by Plaintiff, or to override Plaintiff's express objection to officers entering the home to arrest him.

Plaintiff requested that a supervisor respond.

A supervising officer, presently identified as DOE SUPERVISOR 2, later arrived.

DOE SUPERVISOR 2 was a white male approximately in his 50s to 60s.

37A. Approximately fifteen to twenty minutes elapsed between the arrival of DOE SUPERVISOR 2 and the moment DOE OFFICER 1 and DOE OFFICER 2 crossed

the threshold, during which Plaintiff continued to refuse consent and assert that entry over his objection was unconstitutional.

The co-tenant entered the residence, and DOE SUPERVISOR 2 then solicited consent from the co-tenant.

Plaintiff, while physically present at or near the doorway, again expressly refused consent.

Plaintiff again informed the officers that entry over his objection was unlawful.

Despite Plaintiff's repeated and express refusal, DOE SUPERVISOR 2 authorized officers to enter the residence.

Two uniformed male SJPD officers, presently identified as DOE OFFICER 1 and DOE OFFICER 2, crossed the front-door threshold into the residence on May 31, 2025, entered at least several feet inside the doorway, physically detained Plaintiff just inside the front door, placed him in handcuffs, and escorted him back out through the same doorway. Plaintiff was standing approximately two feet inside the shared entryway when the officers seized and handcuffed him.

DOE SUPERVISOR 2 remained at or near the threshold while authorizing the entry and arrest and observed the warrantless in-home arrest occur.

When Plaintiff again stated that the conduct was unconstitutional, DOE SUPERVISOR 2 responded, "Take it up with Internal Affairs."

No officer observed any ongoing emergency, active injury, immediate threat, or other circumstance justifying immediate warrantless entry.

Officers did not conduct any meaningful inquiry into whether the co-tenant had actual or apparent authority to override Plaintiff's objection or to consent to entry into areas used exclusively by Plaintiff.

The May 31, 2025 incident caused Plaintiff further humiliation, emotional distress, anxiety, and loss of security in his home.

After these incidents, Plaintiff spoke with at least one other individual who reported that SJPD officers had entered that person's home over their objection based on

purported consent from another occupant, and that the person did not pursue any legal or administrative action because they did not know what to do. This conversation reinforced Plaintiff's belief that the conduct he experienced was part of a broader SJPD practice rather than an isolated mistake.

C. Prior Attempts to Arrest Plaintiff at Home

Before May 31, 2025, SJPD officers came to Plaintiff's residence on at least two prior occasions regarding the same misdemeanor warrant.

On those prior occasions, Plaintiff refused to exit the residence.

On those prior occasions, officers did not enter the residence and instead left the scene.

On one prior occasion, an officer told Plaintiff, "You better watch your back."

No other person was present in the residence during at least one or more of those prior encounters who could have offered consent.

These prior encounters demonstrate that SJPD officers understood, or reasonably should have understood, that they could not lawfully enter Plaintiff's home without exigent circumstances or valid consent when Plaintiff refused access.

The later decision to enter on May 31, 2025 over Plaintiff's repeated objection, after prior officers had left the scene when Plaintiff refused entry and no exigent circumstances existed, shows that SJPD officers enforced basic home-entry rules in an inconsistent and unconstitutional manner and that supervisors tolerated or approved that approach.

D. Absence of Exigent Circumstances

At no time during either the October 15, 2023 incident or the May 31, 2025 incident did exigent circumstances exist.

At no time did officers observe any ongoing violent crime inside the home.

At no time did officers observe any immediate threat to officer safety or the safety of others that required immediate warrantless entry.

At no time did officers observe any emergency requiring immediate entry to render aid.

The May 31, 2025 matter involved only a non-violent misdemeanor warrant.

The officers' conduct was therefore not justified by exigent circumstances.

E. Body-Worn Cameras and City-Controlled Evidence

On information and belief, body-worn cameras recorded material portions of one or both incidents, including Plaintiff's objections and the conduct of the responding officers and supervisors.

The City of San Jose and SJPD possess, control, or have access to body-worn camera recordings, dispatch records, incident reports, arrest records, supervisory records, and related evidence concerning these events.

F. Damages and Harm to Plaintiff

Plaintiff was arrested inside his home on two separate occasions despite having no prior arrest history at age 62.

As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress, psychological injury, reputational harm, loss of liberty, and economic losses.

Plaintiff was handcuffed and removed from his residence in view of neighbors and other occupants, causing significant humiliation and embarrassment.

Plaintiff reasonably believes that neighbors now view him as a criminal, causing reputational harm and social stigma in the neighborhood where he has longstanding family ties.

Plaintiff has experienced ongoing fear of law enforcement, including anxiety upon seeing police vehicles or officers.

Plaintiff reasonably fears that law enforcement may again enter his home without lawful authority, causing him ongoing anxiety and altering his behavior within his own residence.

Plaintiff has suffered sleep disruption, including difficulty falling asleep and staying asleep, resulting in fatigue and decreased daily functioning.

Plaintiff has experienced heightened anxiety, stress, irritability, and emotional distress, which have been observed by family and friends.

Plaintiff has developed distrust toward others, including individuals living in his home, negatively impacting his personal relationships.

Plaintiff has reduced social interactions and engagement in normal daily activities due to fear, anxiety, embarrassment, and stigma.

Plaintiff has sought psychiatric care and treatment as a result of these incidents.

Plaintiff has incurred financial losses, including bail costs associated with both arrests.

Plaintiff has experienced a diminished sense of safety and security in his own home, which he previously considered a place of stability and personal refuge.

Plaintiff has developed a diminished trust in law enforcement and reasonably believes that officers may not act in his interest if he requires assistance, causing him to avoid seeking police help when he otherwise would.

Plaintiff has experienced a loss of motivation and disruption in completing a major home remodeling project due to stress and emotional impact from the arrests and police conduct.

Plaintiff has experienced internal conflict and distress related to seeking psychiatric care, contributing to feelings of stigma and difficulty in accepting the need for treatment.

Plaintiff completed law school in 2017 and has experienced a decline in confidence in his professional abilities and future career prospects, including concerns about whether he can pursue a legal career after these arrests and in light of the emotional and psychological impact of the incidents. Plaintiff continues to experience uncertainty, stress, diminished confidence, and emotional distress as he attempts to

reconcile what happened, how he was treated by police, and the impact of those events on his personal and professional life.

## IV. CLAIMS FOR RELIEF

### COUNT ONE - 42 U.S.C. § 1983 - UNLAWFUL ENTRY IN VIOLATION OF THE FOURTH AMENDMENT

(Against Officer Rocha, Officer Leglu, DOE Officers, DOE Supervisors, and Does 1-20)

80. Plaintiff incorporates by reference paragraphs 1 through 79 as though fully set forth herein.

81. The home is entitled to the highest level of protection under the Fourth Amendment.

82. Plaintiff had a clearly established right to be free from warrantless entry into his home absent a warrant, valid consent, or exigent circumstances.

82A. At all relevant times, it was clearly established under Payton v. New York, 445 U.S. 573 (1980), Steagald v. United States, 451 U.S. 204 (1981), Georgia v. Randolph, 547 U.S. 103 (2006), and related Ninth Circuit authority that officers may not enter a home absent a warrant, valid consent, or exigent circumstances, and that a physically present resident's express refusal of consent prevents officers from relying on third-party consent to enter.

83. SJPD officers, including Defendant Rocha and Defendant Leglu on October 15, 2023 and DOE OFFICER 1 and DOE OFFICER 2 on May 31, 2025, intentionally entered Plaintiff's residence.

84. On October 15, 2023, the officers lacked a warrant and remained inside the residence after Plaintiff, who was physically present, immediately and expressly objected.

85. On May 31, 2025, DOE OFFICER 1 and DOE OFFICER 2 entered over Plaintiff's repeated and express refusal, after officers had spent approximately an

hour outside demanding that Plaintiff exit while he explicitly invoked his constitutional rights, and without any exigent circumstances.

86. On May 31, 2025, officers relied on purported third-party consent from a co-tenant even though Plaintiff was physically present in the home and objecting, and even though officers failed to make any reasonable inquiry into the co-tenant's authority to override Plaintiff's objection or to consent to entry into areas used exclusively by Plaintiff.

87. At no time during either incident did exigent circumstances justify the warrantless entry.

88. The entries were objectively unreasonable under the Fourth Amendment.

89. As a direct and proximate result of these unlawful entries, Plaintiff suffered the injuries and damages alleged herein.

**COUNT TWO - 42 U.S.C. § 1983 - UNLAWFUL IN-HOME ARREST IN VIOLATION OF THE FOURTH AMENDMENT**

(Against Officer Rocha, Officer Leglu, DOE Officers, DOE Supervisors, and Does 1-20)

90. Plaintiff incorporates by reference paragraphs 1 through 89 as though fully set forth herein.

91. Plaintiff had a clearly established right to be free from an in-home arrest that was accomplished through unconstitutional entry.

92. On October 15, 2023, Defendants Rocha, Leglu, and DOE officers arrested Plaintiff inside his home after unlawfully remaining inside the residence over Plaintiff's objection.

93. On May 31, 2025, DOE OFFICER 1 and DOE OFFICER 2 arrested Plaintiff just inside the front door of his home after unlawfully entering over his repeated refusal and express invocation of his constitutional rights.

94. The arrest on May 31, 2025 was not rendered lawful merely because officers possessed a misdemeanor arrest warrant where the entry itself was unconstitutional.

The existence of a misdemeanor arrest warrant did not authorize officers to enter Plaintiff's home in violation of the Fourth Amendment.

95. The in-home arrests were objectively unreasonable and violated Plaintiff's Fourth Amendment rights.

96. As a direct and proximate result of these unlawful arrests, Plaintiff suffered the injuries and damages alleged herein.

**COUNT THREE - 42 U.S.C. § 1983 - SUPERVISORY LIABILITY**

(Against DOE SUPERVISOR 1, DOE SUPERVISOR 2, and Does 1-20)

Plaintiff incorporates by reference paragraphs 1 through 96 as though fully set forth herein.

DOE SUPERVISOR 1 arrived on scene while Plaintiff was still under arrest on October 15, 2023, knew that Plaintiff had objected to the officers' warrantless entry and in-home arrest, and had the authority and opportunity to correct or stop the unconstitutional conduct.

Rather than correct or stop the unconstitutional conduct, DOE SUPERVISOR 1 ratified it by approving the arrest and telling Plaintiff to "Take it up with Internal Affairs."

DOE SUPERVISOR 2 personally responded to the May 31, 2025 incident, heard Plaintiff's repeated objections and explicit invocation of his constitutional rights while Plaintiff remained inside the home, and nevertheless authorized DOE OFFICER 1 and DOE OFFICER 2 to enter and arrest Plaintiff over his objection. DOE SUPERVISOR 2 had at least fifteen to twenty minutes between his arrival and the actual entry and arrest to prevent the unconstitutional conduct, yet instead approved and directed it.

DOE SUPERVISOR 1 and DOE SUPERVISOR 2 personally participated in, directed, authorized, approved, and ratified the constitutional violations alleged herein, and their decisions reflected and implemented the City's policies, customs,

and practices regarding warrantless home entries and in-home arrests based on purported co-tenant consent.

102A. DOE SUPERVISOR 1 and DOE SUPERVISOR 2's decisions to approve and ratify the warrantless entries and in-home arrests reflected systemic failures in the City's training and supervision regarding home-entry rules and co-tenant consent, and implemented the City's practices in this area.

As a direct and proximate result of the supervisory defendants' conduct, Plaintiff suffered the injuries and damages alleged herein

**COUNT FOUR - 42 U.S.C. § 1983 - FAILURE TO INTERVENE**

(Against Officer Rocha, Officer Leglu, DOE Officers, DOE Supervisors, and Does 1-20)

Plaintiff incorporates by reference paragraphs 1 through 103 as though fully set forth herein.

During both incidents, multiple officers were present for extended periods while the unconstitutional conduct occurred, including while Plaintiff repeatedly objected to warrantless entry and in-home arrest.

Plaintiff expressly and repeatedly informed officers during both incidents that he did not consent to their entry, that they could not lawfully enter his home over his objection, and that their conduct was unconstitutional.

During both incidents, multiple officers—including approximately four to six officers present on May 31, 2025—were on scene, observed Plaintiff's repeated objections and the supervisors' authorization or ratification of the challenged conduct, and had time to react, yet no officer attempted to stop, prevent, or question the unlawful entry and arrest.

Each individual defendant had a realistic opportunity—ranging from several minutes on October 15, 2023 to nearly an hour on May 31, 2025—to prevent or stop the constitutional violations but failed to do so.

Despite that opportunity, the individual defendants failed to intervene to prevent the unlawful entry into Plaintiff's home and the unlawful in-home arrests.

As a direct and proximate result of that failure to intervene, Plaintiff suffered the injuries and damages alleged herein.

**COUNT FIVE - 42 U.S.C. § 1983 - MUNICIPAL LIABILITY UNDER MONELL**

(Against Defendant City of San Jose)

Plaintiff incorporates by reference paragraphs 1 through 110 as though fully set forth herein.

The constitutional violations suffered by Plaintiff were caused by one or more policies, customs, practices, failures to train, failures to supervise, or ratification by the City of San Jose.

The conduct alleged herein reflects an unconstitutional custom and practice within the San Jose Police Department of entering homes without warrants over the express objection of a physically present resident, relying on purported third-party consent without reasonably investigating authority to consent, and disregarding the clearly established rule that officers may not enter a home without exigent circumstances when a present resident refuses consent.

The City failed to properly train SJPD officers regarding clearly established Fourth Amendment rules governing warrantless home entry, Georgia v. Randolph and related co-tenant consent principles, the effect of a physically present resident's objection, and the need to investigate any ambiguity in a co-tenant's authority before relying on consent to enter or remain in a home.

Defendants' failure to train is demonstrated by officers' inability or refusal to understand and apply these clearly established Fourth Amendment rules even after Plaintiff explicitly invoked and explained them—including specifically citing Georgia v. Randolph and repeatedly stating that officers could not lawfully enter his

home over his objection—while officers, including DOE SUPERVISOR 1 and DOE SUPERVISOR 2, chose to proceed with warrantless entries and in-home arrests.

The repeated prior attempts to arrest Plaintiff at home, during which different SJPD officers left the scene after Plaintiff refused entry and no exigent circumstances existed, show that SJPD officers understood they lacked authority to enter Plaintiff's home under those conditions, yet on May 31, 2025 other SJPD officers entered and arrested Plaintiff over his repeated objection in an inconsistent and unconstitutional manner.

DOE SUPERVISOR 1 and DOE SUPERVISOR 2 approved and ratified the unconstitutional entries and in-home arrests during the incidents instead of correcting them, even though they had time and authority on scene to stop the violations.

The supervisory response, "Take it up with Internal Affairs," given by both DOE SUPERVISOR 1 and DOE SUPERVISOR 2 after Plaintiff expressly protested the unconstitutionality of the officers' conduct, supports the inference that supervisory personnel approved, tolerated, and ratified the violations and that officers were effectively encouraged to handle similar situations in the same way.

118A. On information and belief, SJPD sergeants and lieutenants, including DOE SUPERVISOR 1 and DOE SUPERVISOR 2, are responsible for making and enforcing field decisions regarding whether and how officers may enter homes and make arrests in response to calls and warrants, and their approval of the warrantless home entries and in-home arrests alleged herein reflected and implemented the City's policies and practices in this area.

118B. Plaintiff's experiences, together with his conversation with at least one other individual who reported similar SJPD conduct, support the inference that the unconstitutional entries and in-home arrests were part of a broader pattern rather than isolated incidents.

The City's customs, policies, failures to train, failures to supervise, and ratification were the moving force behind the constitutional violations suffered by Plaintiff.

As a direct and proximate result of the City's customs, policies, practices, failures, and ratification, Plaintiff suffered the injuries and damages alleged herein.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, and each of them, as follows:

A. For compensatory damages according to proof;

B. For punitive damages against the individual defendants according to proof;

C. For costs of suit herein incurred;

D. For pre-judgment and post-judgment interest as allowed by law;

E. For such other and further relief as the Court deems just and proper.

F. For reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

VI. DEMAND FOR JURY TRIAL

121. Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted,

Dated: 4/22/2026

/s/ George Verdugo

GEORGE VERDUGO