United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE VERDUGO,<br>Plaintiff,<br>v.<br>CITY OF SAN JOSE, et al.,<br>Defendants. | Case No. 25-cv-08776-SVK<br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE FAC AND DIRECTING AMENDMENT IN ACCORDANCE WITH RULE 10**<br>Re: Dkt. No. 29 |

Plaintiff brings this action against the City of San Jose (the "City"), Officer Rocha and Leglu (together, the "Named Officers") and various Doe defendants (all collectively, "Defendnats") alleging violation of his Fourth and Fourteenth Amendment rights and seeking damages under 42 U.S.C. § 1983. Dkt. 28 ("FAC"). Before the Court is Defendants' motion to dismiss the FAC, following amendments made by Plaintiff in light of this Court's Prior Order granting in part and denying in part Defendants' first motion to dismiss with leave to amend. Dkt. 29 (the "Motion"); Dkt. 27 ("Prior Order"). All Parties have consented to magistrate-judge jurisdiction.[1] Dkts. 15-16. Having considered the Parties' submissions, the relevant law and the record in this matter, the Court determines the Motion is suitable for resolution without oral argument, (*see* Civil L.R. 7-1(b)), and **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I. RELEVANT BACKGROUND

For the purposes of resolving the Motion, the Court takes the factual allegations of the FAC as true. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (courts generally "accept factual allegations in the complaint as true and construe the

[1] In the FAC, Plaintiff names 50 Doe defendants. *See* FAC. These Doe defendants are not "parties" for purposes of assessing whether there is complete consent to magistrate-judge jurisdiction. *See Williams v. King*, 875 F.3d 500, 502-05 (9th Cir. 2017) (magistrate judge jurisdiction vests after all named parties, whether served or unserved, consent).

pleadings in the light most favorable to the nonmoving party."). The general context of this litigation is described in the Court's Prior Order, so the Court focuses here on the relevant changes made by Plaintiff's FAC.

First, with regard to the October 15, 2023 entry and incident (the "October 2023 Incident"), Plaintiff changes certain allegations and adds additional details. FAC § III.A.[2] Most importantly, Plaintiff removes the allegation that he "was present" when the officers "claimed they had consent to enter from a co-tenant" and that he "repeatedly informed the officers they did not have his consent;" instead, Plaintiff alleges that he "was inside his bedroom when the officers entered the home" and that "[a]s soon as Plaintiff became aware of the officers' presence inside the home, he came out of his bedroom and expressly objected to their entry." *Compare id. with* Dkt. 1, ¶ 9. Plaintiff also adds that an additional officer, Officer Leglu, was involved in the incident. *Id.* Finally, Plaintiff adds that he "requested that a supervisor respond to the scene" and that "Doe Supervisor 1[] later arrived" but, upon being informed by Plaintiff of the assertedly unlawful entry, he "ratified the conduct and stated, "Take it up with Internal Affairs." *Id.*

Second, Plaintiff adds a new category of allegations stemming from a May 31, 2025 entry and incident (the "May 2025 Incident"). With regard to this incident, unlike the October 2023 Incident, Plaintiff alleges that the officers were responding to "a non-violent misdemeanor arrest warrant." FAC § III.B. As with the October 2023 Incident, Plaintiff alleges that he objected to the officers' entry but that they entered and arrested him. *Id.* Plaintiff alleges that a supervisor arrived before the entry and authorized the officers to enter the residence. *Id.*

Plaintiff further alleges that he has spoken with "at least one other individual who reported that SJPD officers had entered that person's home over their objection based on purported consent from another occupant." *Id.* "This conversation reinforced Plaintiff[']s belief that the conduct he experienced was part of a broader SJPD practice rather than an isolated mistake." *Id.*

Plaintiff also adds allegations addressing Defendants' prior-asserted "exigent

[2] The bulk of the FAC includes sections and subsections, but no paragraphs. Paragraph numbering disappears after paragraph 13 and reappears at paragraph 80. This deficiency is addressed in the Court's Conclusion, below. *See, infra*, § IV.

United States District Court
Northern District of California

circumstances" exception, alleging that "[a]t no time did officers observe any ongoing violent crime inside the home," nor was there any threat to officer safety or "any emergency requiring immediate entry to render aid." FAC § III.D.

Based upon his allegations, Plaintiff claims that:

(1) the Named Officers and two other Doe defendants (Doe Officers 1-2) violated his Fourth Amendment right by unlawfully entering his home and arresting him, (FAC ¶¶ 83, 85, 92-93);

(2) that the two Doe Supervisors violated his Fourth Amendment Rights by personally participating in, directing, authorizing, approving and/or ratifying the Officers' violations, (*id.* at 11:18-12:2);

(3) that the Doe Supervisors' behavior "reflected and implemented the City's policies, customs and practices regarding warrantless home entries and in-home arrests based on purported co-tenant consent" and "reflected systemic failures in the City's training and supervision regarding home-entry rules and co-tenant consent," (*id.* at 11:27-12:2 and ¶ 102A) and that the City is thus subject to *Monell* liability, (*id.* at 13:10-15:2); and

(4) that all of the officers and supervisors at issue failed to intervene to prevent the unlawful entries and arrest, (*id.* at 12:14-13:4)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This facial-plausibility standard requires a plaintiff to allege facts resulting in "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *See UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in their favor. *See Boquist*

*v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022). However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

With regard to self-represented plaintiffs, courts "are specifically directed to construe *pro se* pleadings liberally." *United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020). "[B]efore dismissing a *pro se* complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and quotation marks omitted). "A district court should not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Id.* (quoting *Schucker v. Rockwood,* 846 F.2d 1202, 1203-04 (9th Cir.1988) (per curiam).

## III. DISCUSSION

Defendants challenge all of Plaintiff's claims, on various grounds. The Court addresses each of Defendants' arguments in turn.

### A. Defendants' Renewed Challenge to the October 2023 Incident is Unpersuasive

First, Defendants renew their challenge to Plaintiff's allegations regarding the October 2023 Incident. In rejecting Defendants' previous arguments, the Court explained:

> Plaintiff [] alleges that he "was present and repeatedly informed the officers that they did not have his consent to enter and must leave." *Id.*, ¶ 9. This alone is sufficient to survive, as a legal matter, the co-tenant consent exception set forth in *Georgia v. Randolph. See* 547 U.S. at 114 ("Since the co-tenant wishing to open the door to a third party has no recognized authority in law or social practice to prevail over a present and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all."). … Accordingly, because Plaintiff has pleaded that he was "present and objecting" at the time of his co-tenant's consent and because there are no facts in the Complaint to substantiate the nature of the asserted exigency, the Motion to Dismiss the claim against Officer Rocha is **DENIED**.

*Verdugo v. City of San Jose*, No. 25-cv-08776-SVK, 2026 WL 825707, at *2 (N.D. Cal. Mar. 23, 2026). As an initial matter, Defendants' argument that *Georgia v. Randolph* is limited to home

United States District Court
Northern District of California

entry for the purposes of a search, not arrest, could have been presented in the prior motion to dismiss but was not. *See* Dkt. 17 at 6; Dkt. 26 at 2. In any case, the Court disagrees with Defendants. While *Georgia v. Randolph* arose in the search context, its reasoning applies with equal force to any home entry based on co-tenant consent, whether for search or seizure purposes. *See* 547 U.S. at 114.

Defendants' second argument is more complicated. Defendants argue that Plaintiff's FAC changes the facts of the October 2023 Incident. Dkt. 29 at 11-13. Rather than being "present and repeatedly inform[ing] the officers that they did not have his consent to enter," (Dkt. 1 ¶ 9; *see also* Dkt. 3), Plaintiff now alleges that he "was inside his bedroom when the officers entered the home" and "came out of his bedroom and expressly objected to" the entry "[a]s soon as Plaintiff became aware of the officers' presence inside the home." FAC § III.A. This distinction is critical because, as the Supreme Court explains in *Georgia v. Randolph*, the co-tenant consent doctrine draws "a fine line." 547 U.S. at 121 (2006).

> [I]f a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.

*Id.* For example, if the "defendant was actually asleep in the apartment, and the police might have roused him with a knock on the door before they entered with only the consent of an apparent co-tenant" but did not do so, the potentially-objecting tenant is out of luck. *Id.* This is a formalistic line, but "the formalism is justified." *Id.*

Accordingly, the Plaintiff's FAC appears to foreclose his claim. However, the original complaint clearly stated a claim, so now the critical allegations of present-and-objecting versus in-his-bedroom-and-emerging are directly contradictory. *Compare* FAC § III.A. *with* Dkt. 1 ¶ 9. As a general rule, "[a] party cannot amend pleadings to 'directly contradict[t] an earlier assertion made in the same proceeding,'" (*see, e.g.*, *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014)), which would appear to make Plaintiff's inconsistent amended allegations inoperative. However, Ninth Circuit precedent is inconsistent on this point. *See Hernandez v. Schaad*, No. 17-cv-04055-HSG, 2017 WL 6731624, at *3 (N.D. Cal.

Dec. 29, 2017) (citations omitted)). Accordingly, in light of Plaintiff's *pro se* status, the fact that the October 2023 Incident occurred over 3 years ago and Plaintiff's allegation that in all likelihood "body-worn cameras recorded material portions of" the incident, ("FAC § III.E.), the Court will permit Plaintiff's complaint as to the October 2023 Incident to proceed. Discovery may show which objective fact is true: Did Plaintiff object at the door as Named Officers entered, or did he emerge from his bedroom and object only after they had entered? If appropriate, Defendants may then move for early summary judgment.

Accordingly, Defendants' motion to dismiss is **DENIED** as to the October 2023 Incident.

**B. Plaintiff's Claims as to the May 2025 Incident Are Dismissed Because the Defendants Had an Arrest Warrant**

Defendants next argue that Plaintiff's claim as to the May 2025 Incident must be dismissed because "Plaintiff concedes that he had a misdemeanor warrant for his arrest when officers arrived at his home." Dkt. 29 at 13 (citing FAC at 3:27-28). The Court agrees with Defendants, and Plaintiff's arguments in opposition are not on-point. Regardless of whether the officers had a co-tenant's consent, whether that consent was valid, whether Plaintiff stood at the door and objected and/or whether there were exigent circumstances, a valid arrest warrant permits officers to enter a home to arrest the suspect. *E.g.*, *United States v. Gorman*, 314 F.3d 1105, 1111 (9th Cir. 2002) ("[T]here can be little doubt that police can enter a dwelling for the purpose of executing an arrest warrant…" so long as there is "reason to believe the suspect is within the residence." (internal citations and quotation marks omitted)); *contra* Dkt. 30 at 5 (raising arguments that do not challenge the validity of the warrant or the officers' suspicion that Plaintiff was inside).

Accordingly, Defendants' motion to dismiss is **GRANTED** as to the May 2025 Incident. Moreover, because Plaintiff may "[]not amend pleadings to 'directly contradict[t] an earlier assertion made in the same proceeding,'" (*see, e.g.*, *Airs Aromatics*, 744 F.3d at 600), and Plaintiff has already alleged that officers had "a non-violent misdemeanor arrest warrant" and that they waited for an hour outside the home and conversed with Plaintiff before entering, the Court finds that amendment as to the May 2025 Incident would be futile, (FAC § III.B.). Accordingly, the claims as to the May 2025 Incident are **DISMISSED with prejudice**.

United States District Court
Northern District of California

### C. Plaintiff's *Monell* Claim Is Sufficiently Pleaded Based on Ratification as Evidencing City Policy, but Not Based on a Pattern or Failure to Train

As to Plaintiff's *Monell* claim against Defendant City of San Jose (the "City"), as the Court explained in its Prior Order, Plaintiff "must plausibly allege that the City maintains a custom, practice, or policy that inflicts the injury at issue in this case." *Verdugo*, 2026 WL 825707, at *3 (citing *Monell v. Dep't of Soc. Servcs. Of N.Y.*, 436 U.S. 658, 690-91 (1978)).

The City argues that, although Plaintiff has attempted to show a "pattern" of disregard for occupant objections to entry via the October 2023 Incident, the May 2025 Incident and the third incident with an unnamed individual, "two incidents [are] not sufficient to establish [a] custom." Dkt. 29 at 14 (characterizing *Meehan v. Los Angeles Cty.*, 856 F.2d 102 (9th Cir. 1988). Assuming the October 2023 Incident and the incident with the unnamed individual were examples of violations by the City,[3] the Court agrees with Defendants: "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

"Failure to train" similarly requires "[a] pattern of similar constitutional violations by untrained employees," as that is "ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). For similar reasons, Plaintiff has not shown a sufficient pattern to allege a failure-to-train claim, and the FAC contains no other well-pleaded allegations in support of this theory. *See* FAC at 13:25-14:8.

However, Plaintiff's final theory—ratification as demonstrating policy—fairs better. Plaintiff alleges that the Doe Supervisor who responded to the October 2023 Incident did nothing to stop the Named Officers and instead ratified their conduct and told Plaintiff to "Take it up with Internal Affairs." FAC § III.A and 14:8-22. Defendants argue that this is insufficient, because a ratification claim requires "authorized policymakers" to consciously adopted the decisions of other City actors as formal acts of the city, and the Doe Supervisor was not such a policymaker. Dkt. 29

---

[3] The Court disregards the May 2025 Incident, because the City's officers in that case had a warrant. *See, supra*, § III.B.

at 16 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). But Plaintiff pleads that the Doe Supervisors were authorized to ratify conduct because they were "responsible for making and enforcing field decisions regarding whether and how officers may enter homes." FAC at 14:18-19. Moreover, whether the Doe Supervisor was the ultimate ratifying authority or just an intermediary one, Plaintiff's allegations yield an inference that there was an official City policy at play as implemented by "Internal Affairs." *See* FAC § III.A. The Court agrees with Plaintiff that although he "lacks detailed internal municipal evidence concerning training materials, policy memoranda, disciplinary histories, and internal investigations," Rule 12 does not require him to "already possess internal SJPD evidence before discovery." *See* Dkt. 30 at 7. Plaintiff's allegations are sufficient to plausibly state, based on the Doe Supervisor's statement, a *Monell* claim that the Named Officers' conduct was ratified by someone (even if he does not know who).

Accordingly, Defendants' motion to dismiss the claims against the City is **DENIED**. Plaintiff's *Monell* claim against the City may proceed based on the Doe Supervisor's statement, as evidencing ratification or a policy, during the October 2023 Incident.

### D. The Failure to Intervene Claim Against the Named Officers and Doe Supervisor 1 May Proceed

Next, Defendants challenge Plaintiff's failure to intervene claims. Dkt. 29 at 16-17. For the following reasons, this challenge is unpersuasive.

As to the Named Officers, the FAC alleges that Officers Rocha and Leglu were in the same place, committing the same misconduct at the same time, (*see* FAC § III.A.), and thus the Court draws the inference at the pleading stage that each of them had the opportunity to intervene in his comrade's conduct. *See, e.g.*, *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) ("[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen … if they had an opportunity to intercede.").

As to Doe Supervisor 1, Plaintiff alleges that he "requested that a supervisor respond to the scene" after the entry and after Plaintiff was placed in handcuffs. FAC § III.A. Defendants argue that Doe Supervisor 1 thus had no opportunity to intervene in the challenged entry or arrest. Dkt. 29 at 17. However, Doe Supervisor 1 arrived after this request and ratified the conduct of the

Named Officers *before* Plaintiff was "transported for booking." *Id.* Accordingly, at the pleading stage, it is plausible to infer that Doe Supervisor 1 was able to intervene in Plaintiff's unlawful arrest, if not his unlawful entry, claim.

Finally, as to other Doe Officers and Doe Supervisor 2, Plaintiff does not allege that any other officers were involved in the October 2023 Incident, and the Court has dismissed claims arising from the May 2025 Incident. Accordingly, the failure to intercede claims against the Doe Officers are dismissed.

Thus, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss on this ground. The failure to dismiss claim is **DISMISSED with prejudice** as to the Doe Defendants but not as to the Named Officers.

### E. Defendants' Renewed Challenge to Doe Defendant Pleading

Next, Defendants renew their challenge to Plaintiff's assertion of claims against Doe defendants, specifically unspecified Does 1-20 and Does 21-50 (against whom no claims are asserted). The legal landscape has not changed from the Court's Prior Order: "[G]eneral allegations that [Doe Defendants] committed wrongdoing is improper" but "where a plaintiff has specific allegations against officers and/or supervisors but "is unaware of any particular officer's name," the plaintiff "may name 'Doe Officers' and amend the pleading" at the appropriate time to substitute their names. *Verdugo v. City of San Jose*, 2026 WL 825707, at *3.

Plaintiff's Doe allegations hear appear excessive. Plaintiff's well-pleaded factual allegations name one Doe Supervisor at issue in the October 2023 Incident, and it is possible (though not clear) that additional Doe Officers may be implicated. *See* FAC § III.A. Otherwise, no claims against other Doe defendants are stated. Accordingly, the Court **DISMISSES** Does 11-50; Does 1-10, including Doe Supervisor 1, may remain as placeholders for now and at least until after the Parties have exchanged initial disclosures.

## IV. CONCLUSION AND REQUIREMENTS OF RULE 10

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.** Specifically, Plaintiff's claims against the individual defendants survive to the extent they arise out of the October 2023 Incident but not the May 2025 Incident, and

Plaintiff's *Monell* claims against the City survive based on ratification and policy as (allegedly) evidenced by the October 2023 Incident. Accordingly, the Court **ORDERS** Plaintiff to **amend his first amended complaint as follows:**

- **Remove** the claims arising from the May 2025 Incident;
- **Reduce** the number of Doe Defendants to 10;
- **Change the defendants under Counts One and Two** (unlawful entry and unlawful in-home arrest) to be **only** Officer Rocha, Officer Leglu and Doe Officers;
- **Change the defendants under Count Three** (supervisory liability) to be **only** Doe Supervisor 1;
- **Change the defendants under Count Four** (failure to intervene) to be **only** Officer Rocha, Officer Leglu, Doe Officers and Doe Supervisor 1.
- **Remove** the failure to train allegations under Count Five (*Monell* liability);

Additionally, Defendants point out that, although not grounds for dismissal, Plaintiff has failed to state his "claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances" in accordance with Fed. R. Civ. P. 10(b). The Court agrees and **ORDERS** Plaintiff to **fix the numbering of the new complaint he files, so that it contains numbered paragraphs, running in order from 1 until the end.**

Plaintiff's second amended complaint shall be due **no later than August 19, 2026**.

Because Plaintiff's second amended complaint must not add any new factual allegations, Defendants must answer the second amended complaint. Defendants' answer shall be due **no later than 21 days** after Plaintiff's second amended complaint is entered on the docket.

The Court sets an initial case management conference in this case for **October 13, 2026**.

**SO ORDERED.**

Dated: July 22, 2026

SUSAN VAN KEULEN
United States Magistrate Judge